# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

JUANITA K. WILSON,  ]
       ]
   Plaintiff,  ]
       ]
vs.    ]   CV 08-J-1189-NE
       ]
MICHAEL J. ASTRUE,  ]
**Commissioner of Social**  ]
**Security**,  ]
       ]
   Defendant.

## MEMORANDUM OPINION

The plaintiff appeals from the decision of the Commissioner of Social Security denying her supplemental security income. The case is now properly before the court.[1] See 42 U.S.C. § 405(g). At the time of the hearing before the Administrative Law Judge ("ALJ"), the plaintiff was 44 years old, having been born July 12, 1962 (R. 288). She completed the 8th grade and has no further education (R. 70, 288-289). The plaintiff alleged an inability to work due to seizures (R. 65). On appeal, the plaintiff argues that the ALJ failed to consider the additional severe medical impairments of migraine headaches, edema, and anxiety. Plaintiff's memorandum, at 5.

The ALJ found that only the plaintiff's impairment of a seizure disorder is severe, but found that this impairment did not meet an impairment or combination of impairments listed in, or medically equal to, one of those listed in Appendix 1 of Subpart P of Social Security

---

[1] The Commissioner failed to submit a brief in support of the agency's decision.

Regulations No. 4  (R. 23).  Specifically, the ALJ found no evidence that the plaintiff's seizures rose to the level of severity described in 11.02 or 11.03 (R. 23).

The ALJ found that the plaintiff had no physical limitations in her ability to perform work related activity, but did have non-exertional impairments of not working at unprotected heights or around dangerous, unguarded, moving machinery (R. 23).  The ALJ ascribed the further restrictions of avoiding ladders, ropes and scaffolding; avoiding commercial driving and should not operate any moving vehicles such as forklifts or hysters (R. 23-24). Further, the ALJ found the plaintiff's anxiety resulted in no more than a mild restriction of daily living activities, no more than mild difficulty with maintaining social functioning, and no more than mild difficulty maintaining concentration, persistence or pace (R. 25-26).  The ALJ therefore found that plaintiff's, considered both singly and in combination with the seizure disorder, contributed no more than minimal limitations on the plaintiff's ability to engage in work-related activities (R. 26).

Given these limitations, the ALJ found that the plaintiff had no past relevant work but could perform such unskilled positions such as packer, inspector, and assembler (R. 27).  The Vocational Expert who testified at the hearing, testified these types of jobs numbered in the hundreds to thousands in the state economy and in the tens of thousands in the national economy (R. 297).  The ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act for purposes of receiving supplemental security income (R. 28).

The plaintiff argues that the ALJ should have found the plaintiff's anxiety and headaches to be severe impairments.  Plaintiff's memorandum at 6.

The medical evidence of record which was before the ALJ reflects the plaintiff was seen at an emergency room on October 19, 2005, having been found unresponsive by her husband (R. 235, 238). She was admitted to the hospital and an EEG found a mild generalized slowing with superimposed right temporal slowing, which was consistent with post seizure activity (R. 243-246). A chest x-ray, CT scan of her brain and MRI of her brain were negative (R. 256-258). The plaintiff was discharged two days later with a diagnosis of seizures and was prescribed Depakote (R. 262).

She was seen again in the emergency room on October 31, 2005, with the chief complaint of "chest pressure" (R. 110). She also complained of "seizure activity constantly since yesterday..." (R. 111). The plaintiff was diagnosed with seizure and anxiety, told to increase Depakote, and given a prescription for Ativan (R. 112, 117). A CT brain scan was normal (R. 115).

On November 11, 2005, the plaintiff was seen for "weakness" (R. 123). She was transferred to the emergency room for further evaluation (R. 123). Those records note the plaintiff's chief complaint to be generalized pain (R. 221). A chest x-ray was normal (R. 234). The plaintiff went to the emergency room on December 8, 2005, with complaints of having a seizure, panic attacks and a headache (R. 203). A CT scan that date was normal (R. 208). The records note that the plaintiff was out of her seizure medication (R. 211). The plaintiff was again seen in the emergency room on January 2, 2006, for "seizures all day," but no seizure activity was noted at that time (R. 180). The records reflect that the plaintiff ran out of her seizure medication and she was diagnosed with seizures (R. 180-183). Chest x-rays and sinus x-rays that date were negative (R. 193-194).

The plaintiff is followed by Dr. Chris LaGanka, a neurologist. On November 18, 2005, he noted that the plaintiff complained that she had three seizures since being hospitalized, that she could not sleep and she had a migraine headache (R. 127). On that date, the plaintiff denied any generalized weakness and Dr. LaGanka's records reflect that the plaintiff was essentially healthy (R. 127-128). He diagnosed seizures and put the plaintiff on Klonopin (R. 128). In July 2006 the plaintiff informed Dr. LaGanka that she had six seizures since her prior visit, and tension-type headaches (R. 152). She further stated that her husband left her, taking her seizure medication with him (R. 152). The plaintiff again had a normal examination and was diagnosed with complex partial seizures and headaches (R. 152-153). In her next visit, in August 2006, the plaintiff asserted she averaged about one seizure per month, but was again not taking her medication because of low finances (R. 155). Other than dental issues, the plaintiff had a normal examination (R. 155-156).

The plaintiff was seen in the emergency room on May 1, 2006, for a headache and "side pain" (R. 168). Her diagnosis at the time was "seizure" and hospital records reflect that the plaintiff left against medical advice after being told to stop cursing and being loud (R. 170-171). The plaintiff was treated an the emergency room for swollen feet in February 2007 (R. 158-161). She was diagnosed with pedal edema and prescribed Lasix and pain killers (R. 162). X-rays were normal (R. 163-166).

Further records from Dr. LaGanka on March 28, 2007, note that the plaintiff reported six seizures in the prior month (R. 283). His only diagnosis was seizures (R. 284).

The plaintiff was also seen by Dr. Melinda Hart on April 3, 2007 (R. 279). Those notes reflect that the plaintiff is followed by the Good Samaritan Clinic in Cullman, but came

to Dr. Hart "secondary to paperwork issues" (R. 279). The plaintiff complained of bilateral feet and ankle swelling, a seizure disorder, shortness of breath and anxiety since November 2006 (R. 279). She related that her last seizure was March 19, 2007, and that she had approximately two migraine headaches a month, which were treated with Darvocet (R. 279). Upon examination, Dr. Hart noted the plaintiff to converse easily with a flat affect and have no edema in extremities (R. 280). Dr. Hart formed a diagnosis of peripheral edema, for which she prescribed Lasix, a generalized anxiety disorder, for which she prescribed Paxil, and migraine headaches per Dr. LaGanka (R. 281).

At her April 2007 hearing, the plaintiff testified that she averaged two seizures per month, but had six the month prior to her hearing (R. 289). She stated that after a seizure, she needed a couple of days to fully recover (R. 290). The plaintiff also alleged she had panic attacks when she was in a crowd (R. 291). She testified that she had problems with concentration and memory (R. 292). The plaintiff also testified she had one or two migraines a month, was out of Darvocet and was taking over the counter pain medication for them (R. 293). The plaintiff stated, on average, three days a month she could not perform her regular activities (R. 295). She further relayed to the ALJ that if the medical records reflected that she did not take anti-seizure medication as prescribed, the records were wrong (R. 296).

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining: 1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and 2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S. Ct. 1420, 28 L. Ed. 843 (1971); *Lamb v. Bowen*, 847 F.2d 698, 701

(11th Cir. 1988). The Court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, this limited scope does not render affirmance automatic,

> for "despite [this] deferential standard for review of claims . . . [the] Court must scrutinize [the] record in its entirety to determine reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

*Lamb*, 847 F.2d at 701. Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir. 1984).

The ALJ concluded that the plaintiff could perform light, unskilled work (R. 27). He specifically found that the plaintiff's allegations of panic attacks, anxiety, migraines and swelling in her feet were not severe impairments (R. 25-26). He found that the plaintiff's seizures were not disabling because she was not compliant with medication, no medical personnel had witnessed any seizure activity and that no blood tests showed seizures despite therapeutic levels of anti-seizure medication (R. 25).

The record demonstrates that the plaintiff does have non-exertional impairments. The plaintiff's treating physician, Dr. Laganka, offered no opinions as to whether the plaintiff experienced breakthrough seizures in spite of therapeutic drug levels. Indeed, his medical records fail to reflect that any blood level monitoring of anti-seizure medications has taken place. Without this information, the record is insufficient to establish whether or not the plaintiff meets Listing 11.02. The medical records further fail to reflect how much of an impairment migraines, anxiety and/or panic attacks are to the plaintiff's ability to maintain substantial gainful employment. Therefore, the court is unable to conclude whether the medical records as a whole support the ALJ's finding that none of these conditions are "severe," as that term has been defined in the Eleventh Circuit.

The ALJ found the plaintiff's statements concerning the intensity, persistence and limited effects of her symptoms to be "not entirely credible" due to her testimony that she was compliant with seizure medication despite medical records reflecting that she was repeatedly out of this medication (R. 25).  The ALJ does note that on at least one occasion, this was due to "financial considerations" (R. 25).  The ALJ concludes that the plaintiff's seizures do not meet Listings 11.02 or 11.03, with the possible explanation that the plaintiff was out of her medication on several occasions, and that the record contained no information regarding blood level testing for anti-seizure medication (R. 23-25).

The Commissioner may deny SSI disability benefits if the Secretary determines that 1) the claimant failed to follow a prescribed course of treatment, and 2) her ability to work would be restored if she had followed the treatment. *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir.1990) (citing *McCall v. Bowen*, 846 F.2d 1317, 1319 (11th Cir.1988); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir.1987); 20 C.F.R. § 404.930 (1989).  Unlike the decision in *Lucas*, *supra*, the ALJ here did not conclude that the plaintiff's seizures would be controllable with medication, as specified by Listings 11.02 and 11.03.  He made no such finding.

The sole evidence before the court is that plaintiff's seizure activity meets the frequency requirement of Listing 11.02.  Wholly absent from the record is any evidence as to whether this is in spite of therapeutic blood levels of anti-seizure medication.  Given this, the ALJ should have developed the record sufficiently to determine whether the plaintiff's continued seizures were due to non-compliance with medical treatment. *See e.g., Nelms v. Bowen*, 803 F.2d 1164 (11th Cir.1986) (holding that ALJ is obligated to fully and fairly

develop record); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981) (same); *Ford v. Secretary of Health and Human Svcs.*, 659 F.2d 66, 69 (5th Cir. Unit B 1981) (holding that ALJ's findings are not supported by substantial evidence when record does not contain sufficient facts on which to make an informed decision).

Furthermore, because a claimant's failure to adhere to prescribed treatment cannot be grounds for denial of SSI benefits when the reason for such failure is beyond the claimant's control, whether a financial inability to purchase medication impacted the frequency of the plaintiff's seizures should have been considered by the ALJ.  *See Dawkins v. Bowen*, 848 F.2d 1211, 1213-14 (11th Cir.1988) (noncompliance does not prevent claimant from receiving benefits where noncompliance is result of inability to afford treatment).  In order to deny benefits on the ground of failure to follow prescribed treatment, the ALJ must find that had the claimant followed the prescribed treatment, the claimant's ability to work would have been restored. *Dawkins*, 848 F.2d at 1213 (11th Cir.1988) (stating "[w]e agree with every circuit that has considered the issue that poverty excuses noncompliance").  No such finding is contained in the decision of the ALJ.

The court therefore reverses the decision of the ALJ and remands this case to the agency for further consideration of the evidence, proper application of the law and further development of the record consistent with this opinion.  The ALJ should determine whether any testing as to the plaintiff's anti-seizure medication blood levels has been conducted, whether her seizures would be controlled by properly taking this medication, and whether the plaintiff is in fact unable to afford this medication.  The ALJ should also consider whether the plaintiff's other ailments are "severe" as that term has been defined by the 11th Circuit.  A consultative evaluation may be of assistance in this regard.

Based on the lack of substantial evidence in support of the ALJ's findings, it is hereby

**ORDERED** that the decision fo the Commissioner is **REVERSED** and this case is

**REMANDED** to the Agency for further action consistent with this opinion.

Done, this 23rd of January, 2009.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE